701 A.2d 535

In re CONDEMNATION BY THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF TRANSPORTATION, OF RIGHT OF WAY FOR LEGISLATIVE ROUTE 1021, SECTION 1B, a Limited Access Highway, in the City of Pittsburgh.

The BOC GROUP, INC. (formerly Airco, Inc.), Appellee,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 16, 1996.

Decided Sept. 26, 1997.

440

Jeffrey L. Giltenboth, Pittsburgh, for Dept. of Transp.

Andrea Geraghty and Leonard M. Mendelson, Pittsburgh, for the BOC Group.

Before FHAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

### OPINION ANNOUNCING THE JUDGMENT
### OF THE COURT

NIGRO, Justice.

The Commonwealth of Pennsylvania, Department of Transportation (PennDOT) challenges a Commonwealth Court Order affirming an award of delay damages to The BOC Group under the Eminent Domain Code, 26 Pa. Stat. §§ 1–101—1–903 (Supp.1997). As explained below, we hold that condemnees may recover damages for delays in payment of special damages under the Eminent Domain Code. The BOC Group, however, is not entitled to delay damages since PennDOT never took physical possession of the condemned property and there is no evidence that The BOC Group was deprived of the property's use. Thus, we reverse.

On April 25, 1984, PennDOT filed a declaration of taking to condemn property owned by the Estate of Julia Rochez and leased by The BOC Group, Inc. Sometime before June 1, 1984, The BOC Group vacated the building on the property and left behind machinery, equipment, and other personal property.

In August of 1988, The BOC Group petitioned for the appointment of a Board of Viewers to determine its damages as a result of the condemnation.[1] In October of 1992, after a hearing in May, the Board of Viewers issued a report awarding The BOC Group damages for the loss of its machinery and equipment, delay damages, and an attorney and appraisal fee award. PennDOT appealed the delay damages award.

In May of 1993, the Estate of Rochez, The BOC Group and PennDOT executed a Stipulation of Settlement. PennDOT agreed to pay The BOC Group special damages in the amount of $105,865, representing the fair market value of fixed machinery and equipment on the property on the date of condemnation, and $167,775, representing the fair market value of removable machinery and equipment on the property on the date of condemnation. PennDOT would also pay the attorney and appraisal fee award mandated by statute. The parties agreed to mark the viewers' petition and appeal of the viewers' decision settled and discontinued. They decided to litigate whether The BOC Group was entitled to delay damages or interest. PennDOT retained the right to assert all defenses to a delay damages claim.

The BOC Group filed an amended petition for the appointment of a Board of Viewers in November of 1993 to decide if delay damages are recoverable. PennDOT filed preliminary objections to the amended petition. The parties then entered a Stipulation of Facts upon which the trial court would decide the issue. They stipulated in part that PennDOT paid the amounts agreed to in the settlement and that all payments arose under Article VI-A of the Eminent Domain Code on special damages.

The trial court awarded The BOC Group delay damages. It found that The BOC Group did not cause the delay in payment

1. Prior to The BOC Group's filing, the Estate of Rochez and PennDOT litigated the propriety of the taking. The trial court denied The BOC Group's motion to intervene in the litigation. Ultimately, the trial court revested title to all but 20 feet of the property taken in the Estate. While PennDOT paid into court its estimate of just compensation in 1984, the trial court denied PennDOT possession of the property while litigation ensued.

of damages and that delay damages would put it in a similar economic position as before the taking.[2] On appeal, the Commonwealth Court affirmed the award but vacated the order that interest be paid at the market rate. It remanded for a hearing to determine the applicable interest rate. The Commonwealth Court rejected PennDOT's argument that delay damages are not recoverable on special damages. It also rejected PennDOT's argument that The BOC Group was not entitled to delay damages, even if they are recoverable on special damages, because PennDOT never took possession of the condemned property. We granted PennDOT's petition for allowance of appeal.

██ Appellate review of a trial court's decision in an eminent domain matter is limited to a determination of whether the trial court abused its discretion or committed an error of law and whether the findings and conclusions are supported by sufficient evidence. *In re Appeal of Waite*, 163 Pa. Commw. 283, 288 n. 1, 641 A.2d 25, 27 n. 1, *appeal denied*, 539 Pa. 657, 651 A.2d 543 (1994).

Under section 611 of the Eminent Domain Code, the recovery of delay damages depends upon whether a condemnee remains in possession of condemned property. The statute states:

> The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of

---

**2.** On the $105,865 paid as damages for the fixed machinery and equipment, the trial court awarded The BOC Group the interest that accrued and was paid to PennDOT by the Allegheny County Prothonotary from December 27, 1984 through February 1, 1991, while the funds were held in court. It also awarded interest at the market rate for the periods of April 25, 1984 through December 12, 1984 and February 2, 1991 until The BOC Group was paid. On the $167,775 paid as damages for the removable machinery and equipment, the trial court awarded The BOC Group interest at the market rate from April 25, 1984 until it was paid.

relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation[.]

26 Pa. Stat. § 1–611. Section 611 also states that delay damages are not recoverable on amounts the condemnor has paid the condemnee or has deposited with the court. *Id.* Delay damages are calculated when a condemnation damages award is paid. *Id.* The statute concludes:

Provided, however, That no compensation for delay shall be payable with respect to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award of verdict, but shall at the time of payment of the award or judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict.

*Id.*

Section 611 does not address the issue in this case—whether delay damages are recoverable on special damages. The statute does not distinguish the various kinds of damages recoverable under the Eminent Domain Code. To the contrary, it provides compensation to condemnees for delay in "payment" from the time that they relinquish possession of a condemned property.

 The parties stipulated that The BOC Group is a condemnee.[3] A tenant-condemnee is entitled to delay damages from the date it relinquishes possession of a condemned property. *Redevelopment Auth. of Philadelphia v. Driscoll,* 45 Pa. Commw. 202, 207, 405 A.2d 975, 978 (1979). A tenant's condemnation damages include special damages, such as losses related to personal property and relocation expenses. *See* 26 Pa. Stat. § 1–601A (setting forth recoverable special dam-

3. *See also Graham Realty Co. v. Dep't of Transportation,* 67 Pa. Commw. 318, 447 A.2d 342 (1982)(tenants are condemnees entitled to just compensation).

ages). In light of the purpose of delay damages to provide compensation where a condemnor belatedly pays condemnation damages to a condemnee [4] and the rule of strict construction against the Commonwealth,[5] we hold that delay damages are recoverable on special damages. The statute does not distinguish between late payment of damages for the loss in value of a condemnee's property interest and late payment of other kinds of damages. We see no reason to draw such a distinction.

PennDOT relies upon *Redevelopment Auth. of Chester v. Swager*, 12 Pa. Commw. 437, 316 A.2d 136 (1974) and *White v. Redevelopment Auth. of McKeesport*, 69 Pa. Commw. 307, 451 A.2d 17 (1982), where contrary to its decision in this case, the Commonwealth Court held that delay damages are not recoverable on special damages. The court reasoned in these cases that section 611 applies "only to condemned property and when and how delay compensation shall be computed on the value of the condemned property." *Swager*, 12 Pa. Commw. at 446, 316 A.2d at 140. This is a misreading of the statute. Section 611 does not say that delay damages are computed on the value of the condemned property. Rather, the statute provides that compensation will be paid for delays in payment. It addresses when delay damages begin to accrue and the rate at which they are paid.

PennDOT also argues that The BOC Group is not entitled to delay damages because special damages are set forth in Article VI–A of the Eminent Domain Code and delay damages are contained in Article VI. We disagree. Under Article VI of the Eminent Domain Code, a condemnee is entitled to just compensation for the taking of his property. 26 Pa. Stat. § 1–601. Just compensation is defined as:

> the difference between the fair market value of the condemnee's entire property interest immediately before the

**4.** *See Driscoll*, 45 Pa. Commw. 202, 405 A.2d 975 (stating purpose of delay damages).

**5.** *See Hughes v. Dep't of Transportation*, 514 Pa. 300, 308, 523 A.2d 747, 751 (1987)("[e]minent domain statutes are strictly construed against the Commonwealth").

condemnation and as unaffected thereby and the fair market value of the property interest immediately after such condemnation and as affected thereby, *and such other damages as are provided in this code.*

*Id.* § 1–602 (emphasis added). "Other damages" include special damages set forth in Article VI–A. *Id.*, Comment–Joint State Government Comm'n, 1971 Report. Thus, just compensation encompasses special damages. *See also Pikur v. Commonwealth,* 163 Pa. Commw. 251, 641 A.2d 11 (1994)(stating that just compensation includes special damages).[6] Since just compensation includes Article VI and VI–A damages and the purpose of delay damages is to compensate for delays in payment after a taking, we agree with the Commonwealth Court that the allowance of special damages in Article VI–A, as opposed to Article VI, does not preclude recovery of delay damages for their late payment.[7]

■ While delay damages are recoverable on late payment of special damages, as discussed above, they only begin to accrue when the condemnee relinquishes possession of the condemned property. In *Hughes v. Dep't of Transportation,* 514 Pa. 300, 309–10, 523 A.2d 747, 751–52 (1987), this Court construed the meaning of "possession" in this context. The Court explained that when property is condemned, the Commonwealth has equitable possession with the option to take physical possession. Until it exercises its option, the landown-

---

**6.** Special damages provisions were originally codified in Article VI. They were later repealed and recodified in Article VI–A. *Id.* §§ 1–602, 1–601A, Comment–Joint State Government Comm'n, 1971 Report. As a result of the recodification, the legislature amended the definition of just compensation set forth above. While just compensation was defined to include "such other damages as are provided in this *article,*" the word "article" was changed to *"code"* because damages are provided for in both Articles VI and VI–A. *Id.*

**7.** While the Commonwealth Court has stated in other cases that delay damages are not recoverable on Article VI–A damages, it did not consider that just compensation includes special damages. See *Redevelopment Auth. of Philadelphia v. Associated Retail Stores, Inc.,* 47 Pa. Commw. 268, 408 A.2d 181 (1979)(not considering definition of just compensation in finding that Article VI–A does not provide for delay damages); *Marx Stationery & Printing Co., et al. v. Redevelopment Auth. of Philadelphia,* 675 A.2d 769 (1996)(following *Associated Retail Stores* ).

er remains in physical possession. The Court held in *Hughes* that where a declaration of taking deprives a landowner of the full and normal use of his property, as established by the use to which his property was devoted before the declaration, the landowner is no longer in possession under section 611. In such a case, the condemnee may claim delay damages from the date of the declaration of taking. *See also Pittsburgh North, Inc. v. Dep't of Transportation,* 514 Pa. 316, 523 A.2d 755 (1987)(where PennDOT's condemnation did not interfere with the condemnee's normal use of the property, condemnee was not entitled to delay damages).

PennDOT correctly argues that The BOC Group is not entitled to delay damages because PennDOT never took physical possession of the condemned property and the filing of the declaration of taking did not disrupt the ability to use it. The Stipulation of Facts, upon which the parties agreed that this case would be decided, provides that PennDOT never took possession of the real estate or any machinery, equipment or personal property located therein. It also provides that the landowner had possession of the real estate subject to the declaration of taking. The Stipulation of Facts does not state that The BOC Group was deprived of the normal use of the property after the filing of the declaration of taking. While The BOC Group chose to vacate the property, it fails to explain why it left. We find that PennDOT has met its burden of overcoming the presumption of entitlement to delay damages [8] and that, under *Hughes* and *Pittsburgh North,* The BOC Group is not entitled to delay damages.

We thus hold that condemnees may recover damages for delays in payment of special damages under the Eminent Domain Code. The BOC Group, however, is not entitled to delay damages since PennDOT never took physical possession of the property and there is no evidence that The BOC Group was deprived of the property's use. The Commonwealth Court's decision is thus reversed and its order to remand to

8. *See Pennsylvania Game Comm'n v. 21.1 Acres of Land in Washington Township,* 61 Pa. Commw. 383, 433 A.2d 915 (1981) (discussing burdens of proof for delay damages claims).

the trial court to determine the applicable interest rate is vacated. Jurisdiction relinquished.

CAPPY, J., concurs in the result.

ZAPPALA, J., files a concurring opinion in which CASTILLE J., joins.

NEWMAN, J., did not participate in the consideration or decision of this case.

ZAPPALA, Justice, concurring.

I agree that The BOC Group is not entitled to compensation for delay in payment of the damages it received in this case. I am not persuaded that delay compensation under Section 611 is intended to apply to "special damages" under Article VI–A of the Eminent Domain Code.

As the Opinion Announcing the Judgment of the Court notes, because Section 611 on its face does not indicate what the basis for calculating delay compensation is, we are required to ascertain the legislature's intent. Section 611 establishes that delay compensation is payable "from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation." It also provides that delay compensation is not payable as to "funds paid on account, or by deposit into court." These references indicate to me a legislative intention to relate delay compensation to the "traditional" condemnation process, i.e., declaration of taking, estimate of compensation, payment into court, etc.

In contrast, the "special damages" provided for in Article VI–A are nowhere related to relinquishment of possession or any other event in the timetable of the condemnation process. For example, Section 601A(a) refers to reimbursement of moving expenses after they have been incurred; Section 601A(b)(2) provides for determining the value of lost personal property by reference to "the net proceeds obtained by the

displaced person at a commercially reasonable public or private sale." Surely the legislature could not have intended that a delay in paying these damages be calculated from the date of the condemnation.[1]

The error in the reasoning of the Opinion Announcing the Judgment of the Court is its assertion that because "special damages" are included in the statutory definition of "just compensation," delay in paying them warrants compensation under Section 611. Section 611 does not mention "just compensation" any more than it mentions "general damages" or "special damages." It speaks of delay in payment but does not specify delay in payment of what.

In my view, the "special damages" provided in Article VI–A are payments as a matter of legislative grace, not required as constitutional "just compensation." As a result, there is no constitutional requirement that delay compensation be paid with respect to these damages. Finding no clear statutory requirement to that effect,[2] I would interpret Section 611 as

1. The absurdity of this interpretation is especially apparent in situations such as this where the condemnee is a tenant rather than the titleholder of the condemned property. Unlike the titleholder's interest, a tenant's interest is not immediately affected by the declaration of taking itself. A tenant can continue to enjoy all the benefits of its leasehold interest until the agency takes physical control of the property. In fact, it is possible for the lease to expire by its terms before the agency takes possession, in which case the tenant is no longer a condemnee.

The Opinion Announcing the Judgement of the Court employs the fiction of "equitable possession" and "physical possession" and examines whether the tenant was deprived of the normal use of the property by the declaration of taking. However, Section 611 does not provide for delay compensation from the date the agency *takes possession* (physical or equitable); rather delay is computed from the date the condemnee *relinquishes possession*. There is no basis in the statute for inquiring into why the condemnee vacated the premises or whether it was required to do so.

2. Indeed, Section 604A indicates an intent that displaced persons receive prompt, fair, and full payment of "special damages," and establishes a regulatory process to assure that these purposes are accomplished. This regulatory review is unique to the "special damages" provided in Article VI–A. However, Section 604–A contains no suggestion that acquiring agencies are responsible for interest if payments are delayed.

addressing only the delay compensation that is constitutionally required to make the property owner whole.

CASTILLE, J., joins this concurring opinion.